**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | |
|---|---|
| LORI OHLSON-TOWNSEND and MICHAEL TOWNSEND, wife and husband, | No. 18-CV-4093-CJW-MAR |
| Plaintiffs, | |
| vs. | **ORDER** |
| ALEC WOLF, JEROD CLYDE, and, CHEROKEE COUNTY, | |
| Defendants. | |

_____

**TABLE OF CONTENTS**

I.　　BACKGROUND ............................................................................ 1

II.　 APPLICABLE LAW ...................................................................... 4

　　　A.　 Summary Judgment Standard ................................................. 4

　　　B.　 Qualified Immunity ............................................................... 6

III.　ANALYSIS...................................................................................... 7

　　　A.　 False Arrest ........................................................................... 7

　　　　　　1.　 Lori's Claim under Section 1983........................................ 8

　　　　　　　　　a.　 Violation of a Constitutional Right ............................ 8

　　　　　　　　　b.　 Qualified Immunity ................................................12

　　　　　　2.　 Lori's Claim under the Iowa Constitution ............................14

a.   Violation of a Constitutional Right ..............................14

b.   Qualified Immunity ...............................................15

B.   Unresisted Claims.........................................................16

1.   Failure to Train and/or Supervise......................................17

2.   Respondeat Superior ......................................................18

3.   Loss of Consortium........................................................19

4.   Emotional Distress, Reputational Harm, and Other Claims ........20

C.   Punitive Damages ..................................................................21

IV.   CONCLUSION ..................................................................................23

This matter is before the Court on the Motion for Summary Judgement filed by defendants Deputy Sheriff Alec Wolf ("Deputy Wolf"), Sheriff Jerod Clyde ("Sheriff Clyde"), and Cherokee County.[1] (Doc. 24). Plaintiffs Lori Ohlson-Townsend ("Lori") and Michael Townsend ("Michael") timely filed a resistance. (Doc. 25). Defendants timely filed a reply, which they later supplemented. (Docs. 29; 30). For the following reasons, defendants' Motion for Summary Judgment is **granted in part** and **denied in part**.

## I.    BACKGROUND

Lori was formerly married to Kent Ohlson ("Kent"). (Doc. 24-2, at 2). As part of their divorce, Lori and Kent agreed to continue to operate their turkey farm together as co-owners. (*Id.*). Lori and Kent argued over text messages about business dealings and planning their daughter's wedding. (Docs. 25-1, at 4; 30, at 2). On July 19, 2018, Kent sent Lori the following text: "Lori, please do not contact me at all. If there is any business questions or concerns you have please contact my lawyer Dan Connell. Thank you. Kent." (Docs. 24-3, at 19).

On July 26, 2018, Shannon Ohlson ("Shannon"), Lori and Kent's daughter-in-law, called the Cherokee County Sheriff's Department and reported that Lori was harassing Kent. (*Id.*, at 22). Cherokee County Deputy Wolf took the report, noting that Lori texted Kent after Kent's July 19, 2018 request that Lori direct all communication to Kent's attorney. (*Id.*). Specifically, Deputy Wolf noted that Lori sent Kent one text on July 25, 2018, and three texts on July 26, 2018. (*Id.*). On July 31, 2018, Shannon left

---

[1] Two other defendants, Derek Scott and Aaron Schroeder, were dismissed with prejudice at the request of all parties and were terminated as parties to this action. (Doc. 16). Therefore, any allegations against these dismissed defendants are omitted from the Court's analysis here.

a voice message for Deputy Wolf informing him that Lori sent Kent two additional texts on July 27, 2018.[2]  (Docs. 24-3, at 22; 25-3, at 13).

On July 31, 2018, Deputy Wolf filed a Complaint and Affidavit with the Cherokee County Clerk of Court against Lori for Harassment – Third Degree.  (Docs. 24-3, at 25-26).  In his affidavit, Deputy Wolf claimed that Lori harassed Kent through text messages on July 25, 26, and 27, 2018.  (Doc. 24-3, at 26).  Specifically, Deputy Wolf wrote under "State all facts and persons relied upon supporting elements of alleged crime":

> THE DEFENDANT LORI MICHELLE OHLSON-TOWNSEND DID HARASS KENT OLSON BY COMMUNICATING BY TEXT MESSAGE ON 7-25, 7-26 AND 7-27, 2018.  LORI IS THE EX WIFE OF KENT AND HAS BEEN TOLD BY MYSELF TO CEASE CONTACT WITH KENT.  LORI HAS NO LEGITIMATE REASON TO COMMUNICATE WITH KENT.

(*Id.*).  Under headings titled "General Probable Cause, Defendant Implicated," Deputy Wolf typed: "caught in act . . . other physical evidence" and identified below that the "other physical evidence" was text messages.  (*Id.*) (original text in all capitals).

On August 1, 2018, Magistrate Judge Joshua Walsh ("Judge Walsh") issued an Order for Warrant against Lori.  (Doc. 24-3, at 34-35).  That same day, Deputy Wolf composed his investigate notes, which stated:

> On 7-26-18 I took a report of harassment that occurred in Cherokee County. The reporting party, Shannon . . ., stated that . . . Kent . . . was receiving harassing text messages from his ex-wife.  His ex-wife is Lori . . . and they have been separated for some time.  The messages are related to a turkey farm, which Kent owns, and Lori has no connection to.  The text messages were sent by Lori to Kent on the following dates and times.  On 7-25-18 at 2146 hours, 7-26-18 at 0957, 1005 and 1006 hours.  Messages were also sent on 7-27-18 at 0622 and 0952 hours.  Shannon and Kent have told Lori

---

[2] Given that Deputy Wolf stated he took the initial report on July 26, 2018, the Court presumes Deputy Wolf was informed of the two July 27, 2018 text messages via Shannon's July 31, 2018 voice message.  (Docs. 24-3, at 22; 25-3, at 13).

in the past that they do not want to speak to her and that Lori needs to stop
sending Kent text messages.

(*Id.*, at 22) (original text in all capitals).  In his notes, Deputy Wolf stated that he left
Lori a voicemail on July 26, 2018, instructing her to stop sending Kent text messages,
but Lori never replied.  (*Id.*).  On August 1, 2018, Deputy Wolf stated that he contacted
Kent who reported that Lori had sent him one text that morning.  (*Id.*).

On August 2, 2018, Lori turned herself in at the Storm Lake Police Department
where she was booked and released.  (*Id.*, at 36).  That same day, Judge Walsh issued a
No Contact Order against Lori, prohibiting her from contacting Kent.  (*Id.*, at 38-41).
On August 3, 2018, Lori filed an initial appearance and pled not guilty.  (*Id.*, at 42).  On
September 20, 2018, the parties agreed to dismiss the charge on the condition that Lori
pay $37.50 in court costs and the Cherokee County Attorney dismissed the charge.  (*Id.*,
at 45-46).

On October 12, 2018, Lori and her husband Michael filed a Petition at Law and
Jury Demand in the Iowa District Court in and for Cherokee County against defendants.
(*Id.*, at 47-49).  On November 14, 2018, plaintiffs amended their petition.  (Doc. 4).  In
their amended petition, plaintiffs assert that Deputy Wolf falsely stated that he contacted
Lori on July 26, 2018, and advised her to cease communications with Kent, that Cherokee
County Sheriff Clyde failed to properly train and supervise Deputy Wolf, and that
Cherokee County is liable under the doctrine of respondeat superior.  (*Id.*).  Plaintiffs
also claim that defendants' actions were "willful and wanton," thus warranting punitive
damages.  (*Id.*, at 6).  Michael also requested "loss of consortium as a result of the
damages" to Lori.  (*Id.*).  On November 19, 2018, defendants removed the case to this
Court based on their belief that plaintiffs intended to assert a false arrest claim under Title
42, United States Code, Section 1983 ("Section 1983").  (Docs. 1; 24-2, at 5).

## II.     APPLICABLE LAW

### A.     *Summary Judgment Standard*

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  When asserting that a fact is undisputed or is genuinely disputed, a party must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Alternatively, a party may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B).  More specifically, a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2).

A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "An issue of material fact is genuine if it has a real basis in the record," *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted), or "when a reasonable jury could return a verdict for the nonmoving party on the question," *Wood v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (internal quotation marks and citation omitted).   Evidence that presents only "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of fact genuine.  In sum, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" that it

requires "a jury or judge to resolve the parties' differing versions of the truth at trial." *Id*. at 249 (citation and internal quotation marks omitted).

The party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citation omitted). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or other evidence designate specific facts showing that there is a genuine issue for trial. *See Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005).

In determining whether a genuine issue of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014); *Matsushita*, 475 U.S. at 587-88 (citation omitted); *see also Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009) (stating that in ruling on a motion for summary judgment, a court must view the facts "in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them") (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). A court does "not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004) (citation omitted). Rather, a "court's function is to determine whether a dispute about a material fact is genuine[.]" *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996). When considering a motion for summary judgment, the court "need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

## B.    Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citations and internal quotation marks omitted). Qualified immunity is "an immunity from suit rather than a mere defense to liability [and] it is effectively lost if a case is erroneously permitted to go to trial." *Id.* at 231 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "[Q]ualified immunity protects officials who make bad guesses in gray areas." *Estate of Walker v. Wallace*, 881 F.3d 1056, 1060 (8th Cir. 2018).

When a motion for summary judgment rests on a claim of qualified immunity, courts examine two prongs to resolve the claim: (1) the court must decide if the facts established by the record make out a violation of a constitutional right, and (2) "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232. Courts have discretion as to which of the two prongs to apply first. *Id.* at 236. In assessing qualified immunity at the motion for summary judgment stage, the court determines the material facts under the Rule 56 standard, but "[o]nce the predicate facts are established, the reasonableness of the official's conduct under the circumstances is a question of law." *Tlamka v. Serrell*, 244 F.3d 628, 632 (8th Cir. 2001). "On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A plaintiff bears the burden of showing that the law was clearly established. *Estate of Walker*, 881 F.3d at 1060.

For the law to be clearly established "existing law must have placed the constitutionality of the officer's conduct beyond debate. This demanding standard

protects all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal citations and quotation marks omitted). Further, "precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that every reasonable official would know." *Id.* at 590 (internal quotation marks and citations omitted). A right is clearly established by controlling authority, or, absent that, a "robust consensus of cases of persuasive authority," which puts an officer on notice that his conduct is unlawful. *De La Rosa v. White*, 852 F.3d 740, 745 (8th Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Like liability under Section 1983, qualified immunity is personal, so the court assesses each individual's conduct independently. *Marsh v. Phelps Cty.*, 902 F.3d 745, 754 (8th Cir. 2018).

## III.     ANALYSIS

### A.     False Arrest

The Court notes that, in their amended petition, plaintiffs fail to state the nature of Lori's false arrest claim or the legal authority supporting it. (Doc. 4). In their resistance to defendants' Motion for Summary Judgment, plaintiffs state for the first time that Lori's "arrest without probable cause" was a violation of her "state and federal constitutional rights." (Doc. 25, at 2). Plaintiffs cite Section 1983 and the Fourth Amendment to support their federal claim and Article I, Section 8 of the Iowa Constitution to support their state claim. (Doc. 25-2, at 3-6). Although defendants repeatedly point out alleged deficiencies in plaintiffs' pleadings, defendants have not moved to dismiss plaintiffs' amended petition (Doc. 4) for failing to state a claim. Any argument about the sufficiency of plaintiffs' amended petition is undermined by the fact that plaintiffs' amended petition was sufficient to alert defendants of the nature of this claim, as indicated by defendants' removal of this case to this Court based on their understanding that plaintiffs intended to assert a false arrest claim under Section 1983.

The Court will, therefore, interpret plaintiffs' claim for false arrest as arising under the Fourth Amendment of the United States Constitution, via Section 1983, and Article I, Section 8 of the Iowa Constitution as stated in plaintiffs' resistance.

### 1. Lori's Claim under Section 1983

### a. Violation of a Constitutional Right

"Section 1983 provides a remedy against any person who, under color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992) (internal quotation marks omitted). "A [Section] 1983 unlawful seizure or false arrest claim relies on a substantive Fourth Amendment right to be free from unreasonable searches and seizures." *Lingo v. Burle*, No. 4:06-CV-1392 CAS, 2008 WL 2787703, at *3 (E.D. Mo. July 15, 2008) (citing *Hannah v. City of Overland*, 795 F.2d 1385, 1389 (8th Cir. 1986)). "A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005) (citation omitted).

When an officer makes an arrest on a facially valid warrant approved by a judge, a plaintiff must show that the arresting officer "'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for a warrant' and . . . that 'such statements or omissions [we]re material, or necessary, to the finding of probable cause.'" *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000) (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)); *see also Hinchman v. Moore*, 312 F.3d 198, 205-06 (6th Cir. 2002) ("Falsifying facts to establish probable cause to arrest . . . an innocent person is of course patently unconstitutional. . ..."). If an affidavit contains false statements, the Court sets asides those statements to determine whether the affidavit, in their absence, is still sufficient to establish probable cause. *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010).

"Probable cause . . . exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991).

Deputy Wolf, in his affidavit supporting the warrant against Lori, stated that Lori harassed Kent on three different dates through text messages. (Doc. 24-3, at 26). Deputy Wolf stated that he "told" Lori to cease contact with Kent, and that Lori had no legitimate reason to contact Kent. (*Id.*). In his investigative notes, Deputy Wolf stated that he "left [Lori] a voicemail" to which she never responded. (*Id.*, at 22). Records from the Cherokee County Sheriff's Office, however, state that Deputy Wolf called Lori but her "voicemail box was full" and that he would "try again later[.]" (Doc. 25-3, at 13). No subsequent call from Deputy Wolf to Lori appears in the record.[3] Deputy Wolf testified that he only called Lori once. (*Id.*, at 30). Lori testified that, during this period, she never spoke to or received a voicemail from Deputy Wolf. (*Id.*, at 4). Lori also testified that the voicemail box on her phone is full due to saved messages from her grandmother and cannot accept new messages. (*Id.*).

Defendants correctly note that a person charged with harassment under Iowa law need not have been warned by an officer to cease communication. (Doc. 24-1, at 11). Harassment does, however, require that the party have the "intent to intimidate, annoy, or alarm another person" via some electronic communication "without legitimate purpose and in a manner likely to cause the other person annoyance or harm." IOWA CODE § 708.7. The Court must view the facts in the light most favorable to the plaintiffs and assume, at this stage, that Deputy Wolf did not speak to Lori or leave her a voicemail.

---

[3] Lori's phone records show only one call from Cherokee, Iowa on July 26, 2018, at 9:09 PM. (Doc. 25-3, at 40-41). The call was incoming and lasted for approximately two minutes. *Id.* Based on these records, Lori did not make or receive any other calls to or from Cherokee, Iowa between July 23, 2018, and July 28, 2018. *Id.*

The fact that Deputy Wolf did not tell Lori to cease contact with Kent is not, standing alone, dispositive as to whether there was probable cause to believe that Lori's text messages constituted harassment. The lack of a warning by Deputy Wolf, however, limits the factual basis for a finding that the text messages from Lori to Kent were sent with the intent to intimidate, annoy, or alarm Kent or that Lori sent the messages without a legitimate purpose.

Further, in his affidavit, Deputy Wolf indicated that Lori was "caught in [the] act" and that there was physical evidence of the alleged harassment in the form of text messages. (Doc. 24-3, at 26). Deputy Wolf claims that Kent sent screen shots of the allegedly harassing texts to Deputy Wolf through his work email. (Doc. 25-3, at 27). Cherokee County was unable to find any audit trail of the electronic case file or any electronic evidence log indicating whether Deputy Wolf received or uploaded any evidence into the case file. (*Id.*, at 43). Cherokee County stated that it has no emails from Kent to Deputy Wolf in its possession, custody, or control. (*Id.*). Drawing all inferences in plaintiffs' favor, a reasonable jury could conclude that Deputy Wolf never spoke to Kent before swearing out the warrant.[4] Nowhere in the record does Deputy Wolf recite the content of these texts; he merely notes their alleged dates and times. Plaintiffs' assertion that Deputy Wolf never actually reviewed the text messages is further

---

[4] At his deposition, Deputy Wolf assured that he "did speak to Kent" but admitted that any such contact is not reflected in his documentation. (Doc. 25-3, at 27). Also, Deputy Wolf did not testify that he actually recalled meeting with Kent. He merely testified that he "wouldn't have" requested the warrant without speaking to Kent first. (*Id.*). Deputy Wolf went on to testify that he must have talked to Kent before requesting the warrant because otherwise he could not have acquired the messages from Kent. (*Id.*). This reasoning is flawed, however, because there is no indication either in the application for the warrant (Doc. 24-3, at 25-26) or in Deputy Wolf's investigative notes (*id.*, at 22) that Deputy Wolf reviewed the content of the alleged text messages prior to requesting the warrant. Deputy Wolf's only recorded interaction with Kent during this period occurred on August 1, 2018, after Deputy Wolf swore out the warrant. (Doc. 24-3, at 22).

supported by Deputy Wolf's factually incorrect statements, particularly that Lori did not have any ownership interest in the turkey farm. (Doc. 24-3, at 22). Again, viewing these facts in the light most favorable to plaintiffs, Deputy Wolf never reviewed the substance of these texts before completing his affidavit. At this stage, the Court must assume that Deputy Wolf did not actually possess "other physical evidence" in the form of text messages and therefore Lori was not "caught in [the] act" of harassment. (Doc. 24-3, at 26).

Having found, for purposes of summary judgment, that Deputy Wolf included false statements in his affidavit, the Court must determine whether probable cause existed in the absence of the false statements. *Sykes*, 625 F.3d at 305. After removing Deputy Wolf's statement that he warned Lori not to contact Kent and that Deputy Wolf had evidence of the alleged harassment in the form of text messages, the affidavit is left with Deputy Wolf's bare assertion that Lori harassed Kent by sending him text messages on three different dates without a legitimate purpose. (Doc. 24-3, at 22).

Probable cause cannot be based on "a mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause. Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Illinois v. Gates*, 462 U.S. 213, 239 (1983). After removing the false statements, Deputy Wolf's affidavit contains only the legal conclusion that Lori's text messages to Kent constituted harassment under Iowa Code Section 708.7(4). This legal conclusion alone cannot support a finding of probable cause.

On the other hand, Deputy Wolf omitted other relevant facts about the phone calls that he could have, but did not include in the affidavit. As noted above, on July 26, 2018, Lori and Kent's daughter-in-law called the Cherokee County Sheriff's Department and Deputy Wolf took the report, noting that Lori texted Kent after Kent's July 19, 2018

request that Lori direct all communication to Kent's attorney. (*Id.*). Specifically, Deputy Wolf noted that Lori sent Kent one text on July 25, 2018, and three texts on July 26, 2018. (*Id.*). On July 31, 2018, Shannon left a voice message for Deputy Wolf informing him that Lori sent Kent two additional texts on July 27, 2018. (Docs. 24-3, at 22; 25-3, at 13). These additional facts show that Lori texted six times in three days after Kent told Lori to direct all communication to Kent's attorney.

As noted, harassment requires that the party have the "intent to intimidate, annoy, or alarm another person" via some electronic communication "without legitimate purpose and in a manner likely to cause the other person annoyance or harm." IOWA CODE § 708.7. Without the content of the text messages, the only facts from which a judge could conclude that the texts were intended to intimidate, annoy, or alarm another person is the number of texts alone. There is a dearth of Iowa case law involving text messages as a basis for a harassment charge. The Court can imagine that a sufficiently large number of text messages could, by itself, provide a factual basis for probable cause to believe the sender intended to annoy the victim. Imagine, for example, if Lori had sent Kent 600 text messages in three days, instead of six messages in three days. The Court cannot conclude, viewing the facts in the light most favorable to the non-moving parties, that even if the issuing judge would have been aware of the precise number texts and time period involved that it would have supported a finding of probable cause here.

Thus, there is a genuine issue of material fact as to whether Deputy Wolf violated Lori's Fourth Amendment rights.

### b.    *Qualified Immunity*

In light of the Court's factual findings, Deputy Wolf is not entitled to qualified immunity on Lori's false arrest claim. A warrant that is based upon an affidavit containing a deliberate falsehood or reflecting a reckless disregard for the truth violates the Fourth Amendment. *See, e.g.*, *Hunter v. Namanny*, 219 F.3d 825, 829 (8th Cir.

2000) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). An officer, however, is still entitled to qualified immunity "if the warrant affidavit, as reconstructed according to *Franks*, would still provide probable cause to arrest or search." *Id.* (citing *Bagby v. Brondhaver*, 98 F.3d 1096, 1099 (8th Cir. 1996)).

With the allegedly false information removed, Deputy Wolf's affidavit would contain only Shannon's report that Lori communicated with Kent via text message on July 25, 26, and 27, 2018, and the legal conclusion that those text messages constituted harassment. If, as is appropriate under *Franks*, the Court adds in information known to Deputy Wolf but not included in the affidavit, then a fully reconstructed affidavit would include the dates and number of texts. The reconstructed affidavit would still not indicate that Deputy Wolf reviewed the content of the text messages or discussed the messages with either Lori or Kent. The existence of six text messages in three days from Lori to Kent, without any information as to their content, does not sufficiently establish probable cause that Lori committed harassment. *See Hunter*, 219 F.3d at 830-31. The representations that Deputy Wolf told Lori to "cease contact with Kent" and that Deputy Wolf had reviewed the offending messages are critical in establishing that Lori sent the messages without a legitimate purpose, or that Lori sent the messages in a manner likely to annoy or harm Kent. *See id.* at 831. It is "clearly established that the Fourth Amendment requires a warrant application to contain a truthful factual showing of probable cause." *Id.* (citing *Mueller v. Tinkham*, 162 F.3d 999, 1003 (8th Cir. 1998)). Given that a jury could find that Deputy Wolf included false information in the warrant application with a reckless disregard for the truth, it is appropriate for a jury to determine whether Deputy Wolf's actions violated Lori's Fourth Amendment rights. *See id.*

In their motion, defendants note that Deputy Wolf "did not arrest [Lori], take her into custody, or confine her in any manner." (Doc. 24, at 7). There is no dispute that Lori voluntarily surrendered at the Storm Lake Police Department. (Doc. 24-3, at 36).

Defendants appear to argue, without any authority, that Deputy Wolf cannot be liable because he did not cause Lori to be seized. The fact that Lori voluntarily surrendered, and a different officer took Lori into custody does not absolve Deputy Wolf of liability. "For a defendant to be held liable under [Section] 1983, he or she must have personally participated in, or had some responsibility for, the particular act which deprived the plaintiff of a constitutionally protected right." *Cook v. Long*, No. 1:05CV211 HEA, 2009 WL 1578924, at *5 (E.D. Mo. June 3, 2009) (citing *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007)); *see also Mayorga v. Missouri.*, 442 F.3d 1128, 1132 (8th Cir. 2006) (holding that a plaintiff in a Section 1983 case "must allege specific facts of [defendant's] personal involvement in, or direct responsibility for, a deprivation of his constitutional rights.").

Lori would not have surrendered, and thus would not have been taken into custody, but-for the warrant Judge Walsh issued based on Deputy Wolf's affidavit. As the Court found above, a jury could find Deputy Wolf's affidavit contained statements that Deputy Wolf made with a reckless disregard for their truth. Viewing the facts in the light most favorable to plaintiffs, Deputy Wolf participated in, or was responsible for, Lori's arrest. Thus, there is a sufficient causal connection between Deputy Wolf's conduct and the violation of Lori's Fourth Amendment rights.

For these reasons, defendants' Motion for Summary Judgment (Doc. 24) is **denied** as to Lori's claim for false arrest under Section 1983.

### 2.    *Lori's Claim under the Iowa Constitution*

### a.    *Violation of a Constitutional Right*

"Both the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution prohibit unreasonable searches and seizures by the government." *State v. Tyler*, 830 N.W.2d 288, 291 (Iowa 2013). These two provisions "use nearly identical language and were generally designed with the same scope, import,

and purpose," *State v. Pals*, 805 N.W.2d 767, 771-72 (Iowa 2011), but the Iowa Supreme Court "is free to interpret [the Iowa] [C]onstitution as providing *greater* protection for [Iowa] citizens' constitutional rights." *State v. Cline*, 617 N.W.2d 277, 285 (Iowa 2000) (*abrogated on other grounds by State v. Turner*, 630 N.W.2d 601, 606 n.2 (Iowa 2001)). The Iowa Supreme Court has not adopted the same qualified immunity standard applicable to Section 1983 claims. For "purposes of article I, sections 1 and 8 . . . qualified immunity [is] available to those defendants who plead and prove as an affirmative defense that they exercised all due care to conform to the requirements of the law." *Baldwin v. City of Estherville*, 915 N.W.2d 259, 279 (Iowa 2018).

As the Court found above, under the *Franks* analysis, plaintiffs have proffered sufficient facts to generate genuine questions of material fact as to whether the warrant for Lori's arrest was issued as a result of statements Deputy Wolf made with a reckless disregard for their truth. The Iowa Supreme Court has adopted the *Franks* standard. *State v. Niehaus*, 452 N.W.2d 184, 186 (Iowa 1990) (citing *State v. Groff*, 323 N.W.2d 204, 206-08 (Iowa 1982)). Thus, plaintiffs have likewise set forth sufficient facts to create a genuine issue of material fact about whether Deputy Wolf's statements in his affidavit violated Lori's rights under Article I Section 8 of the Iowa Constitution.

### b.    *Qualified Immunity*

Given that the Court has found Deputy Wolf is not entitled to qualified immunity on Lori's claim under Section 1983, Deputy Wolf is also not entitled to qualified immunity under the "all due care" standard of the Iowa Constitution. The Iowa Supreme Court has held that an officer is entitled to qualified immunity from claims under the Iowa Constitution where the officer proves that he "exercised all due care to comply with the law." *Baldwin*, 915 N.W.2d at 281. The Iowa Supreme Court equated the lack of due care with negligence. *Id.* at 280. This Court has likewise found that the all due care standard embodies a negligence standard. *Baldwin v. Estherville*, No. C 15-3168-MWB,

2018 WL 4575995, at *19 (N.D. Iowa Sept. 14, 2018). Given the Iowa Supreme Court's recent adoption of the "all due care" qualified immunity standard, this Court has also noted that there is little guidance on its application, and there may be other considerations in addition to negligence. *Id.* at *21-23. The Court can determine, at a minimum, that an officer who acted negligently is not entitled to qualified immunity against claims under the Iowa Constitution.

Under federal law, on the other hand, a state actor who is merely negligent, rather than being plainly incompetent or knowingly violating the law, is entitled to qualified immunity. *See e.g. Latimore v. Widseth*, 7 F.3d 709, 713 (8th Cir. 1993). Thus, the Court finds that the Iowa standard for qualified immunity is more stringent than the federal standard. The Court found that Deputy Wolf was not entitled to qualified immunity under the less stringent federal standard, and for the same reasons he is not entitled to qualified immunity under Iowa's "all due care" standard.

For these reasons, defendants' Motion for Summary Judgment (Doc. 24) is **denied** as to Lori's claim for false arrest under the Iowa Constitution.

### B. *Unresisted Claims*

In their amended petition, plaintiffs refer to a variety of claims beyond false arrest. These claims include failure to train and/or supervise against Sheriff Clyde, respondeat superior liability against Cherokee County, and loss of consortium on behalf of Michael. (Doc. 4, at 5-6). A claim for emotional distress is less apparent but can also be inferred from plaintiffs' petition. (*Id.*, at 6). In their Motion for Summary Judgment, defendants provide argument on plaintiffs' claims of failure to train and/or supervise, respondeat superior liability, and loss of consortium. (Doc. 24-1, at 14-18). Plaintiffs do not respond to these arguments or even mention these claims in their resistance. (Doc. 25). On September 20, 2019, defendants filed a reply noting that plaintiffs failed to resist summary judgment on any of these claims. (Doc. 29, at 1).

Courts may grant summary judgment as to unresisted claims if the motion is properly supported. *See, e.g.*, *White v. Kautzky*, 269 F. Supp. 2d 1054, at 1057, 1060 (N.D. Iowa 2003) (affirming a magistrate judge's grant of summary judgment "because the motion was properly supported and unresisted as to the class action claims[.]"); *MHC Inv. Co. v. Racom Corp.*, 254 F. Supp. 2d 1090, 1100-01 (S.D. Iowa 2002) (granting summary judgment on an unresisted claim); *Dodds v. United States*, No. C 96-304-EJM, 1997 U.S. Dist. LEXIS 13297, at *2 (N.D. Iowa Aug. 8, 1997) ("Plaintiff's motion for partial summary judgment is properly supported and unresisted. Accordingly, the motion shall be granted."). Thus, the Court must determine whether defendants' Motion for Summary Judgment is properly supported on these unresisted claims.

### 1. Failure to Train and/or Supervise

Regardless of titles, government officials are generally only liable for their own individual misconduct. *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). A supervising officer may, however, be liable for constitutional violations committed by an inferior officer if the supervising officer "participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997) (citation and internal quotation marks omitted). A supervising officer may be liable if they "demonstrate[ ] deliberate indifference or tacit authorization of the offensive acts by failing to take remedial steps following notice of a pattern of such acts" by inferior officers. *Wilson v. City of N. Little Rock*, 801 F.2d 316, 322 (8th Cir. 1986). Supervising officers are entitled to qualified immunity so long as they have not violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818.

In their amended petition, plaintiffs assert that Sheriff Clyde "failed to train, and/or supervise" Deputy Wolf. (Doc. 4, at 5). There is no further discussion of this claim in the amended petition. Defendants argue that plaintiffs have provided no evidence

to support this claim and that plaintiffs have not shown any causal relationship between any alleged failure to train or supervise and Lori's injuries. (Doc. 24-1, at 14-16). There is no dispute that Deputy Wolf graduated from the Iowa Law Enforcement Academy and completed a field training program.[5] (Docs. 24-1, at 16; 24-3, at 84). There is no evidence in the record to show any deficiencies in either the Iowa Law Enforcement Academy's training program or the Cherokee County Sheriff's Office's field training program, or to connect any such deficiencies to Deputy Wolf's conduct. Given that there are no facts in the record on this issue, no reasonable jury could find in favor of plaintiffs on this claim, even when construing the facts in the light most favorable to plaintiffs.

For these reasons, the Court **grants** defendants' Motion for Summary Judgment (Doc. 24) as to plaintiffs' claim for failure to train and/or supervise against Sheriff Clyde. Plaintiffs' failure to train and/or supervise claims is plaintiffs' only claim against Sheriff Clyde. The Clerk of Court is directed to **enter judgment** in favor of Sheriff Clyde and to **terminate** Sheriff Clyde as a party to this case.

### 2. Respondeat Superior

Plaintiffs assert that "Cherokee County is liable for the conduct of [Sheriff Clyde and Deputy Wolf] through respondeat superior, as all of their acts in this matter were within the course and scope of their employment with the Cherokee County Sheriff's Office." (Doc. 4, at 5-6). In their Motion for Summary Judgment, defendants argue that respondeat superior under Section 1983 is inapplicable as a matter of law. "[A] local government may not be sued under [Section] 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its

---

[5] The Court notes that defendants' brief failed to provide a citation to the record regarding Deputy Wolf's training. In several places defendants erroneously left in placeholder citations. (Doc. 24, at 10, 12, 13, 16).

lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" that the government is responsible under [Section] 1983." *Id.* Plaintiffs have not provided any evidence that a policy or custom existed at the Cherokee County Sheriff's Office which resulted in Lori's arrest. Therefore, Cherokee County cannot be held liable under a theory of respondeat superior under Section 1983.

Defendants, however, provide no argument as to respondeat superior under the Iowa Constitution. Unlike Section 1983, it appears that respondeat superior liability is available under the Iowa Constitution against a governmental entity. *See Baldwin v. City of Estherville*, 929 N.W.2d 691, 696, 703 (Iowa 2019) (noting a plaintiff's claim against a city under respondeat superior and the dissent's agreement that the city "may be held liable for state constitutional torts under a respondeat superior theory."); *see also* IOWA CODE § 670.2(1) ("[E]very municipality is subject to liability for its torts and those of its officers and employees, acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function."). Due to the availability of this remedy and defendants' lack of support for their motion on this issue, the Court cannot grant summary judgment on Lori's respondeat superior claim under the Iowa Constitution.

For these reasons, the Court **grants** defendants' Motion for Summary Judgment (Doc. 24) as to plaintiffs' claim of respondeat superior liability against Cherokee County under Section 1983 but **denies** defendants' motion as to respondeat superior liability under the Iowa Constitution.

### 3. *Loss of Consortium*

In their amended petition, plaintiffs claim that Michael "suffered a loss of consortium as a result of the damages" to Lori. (Doc. 4, at 6). Loss of consortium compensates spouses who have suffered a loss of "companionship, affection, and aid" as a result of some injury to the other spouse. *Spaur v. Owens-Corning Fiberglass Corps.*,

510 N.W.2d 854, 869-70 (Iowa 1994); *see also DeBinder v. Albertson's, Inc.*, No. CV 06-1804-PCT-PGR, 2009 WL 57096, at *10-11 (D. Ariz. Jan. 8, 2009) (similarly defining loss of consortium as loss of "love, affection, protection, support, services, companionship, care, society, and in the martial relationship, sexual relations" resulting from damages to a spouse) (citations omitted). In other words, the marital relationship must be sufficiently harmed to warrant damages.

On August 2, 2018, Lori turned herself in at the Storm Lake Police Department, and was booked and released. (Doc. 24-1, at 36). The next day, Lori's attorney filed a written appearance and plea of not guilty. (*Id.*, at 42). Less than seven weeks later, the charges against Lori were dismissed on the condition that Lori pay $37.50 in court costs. (*Id.*, at 45-46). There is no evidence in the record that Lori and Michael's martial relationship was harmed in any way by this brief interaction with the criminal justice system. Given that there are no facts in the record on this issue, no reasonable jury could find in favor of plaintiffs on this claim.

For these reasons, the Court **grants** defendants' Motion for Summary Judgment (Doc. 24) as to Michael's claim of loss of consortium. Michael's loss of consortium claim is his only claim in this matter. The Clerk of Court is directed to **enter judgment** against Michael and to **terminate** Michael as a party to this case.

### 4.    *Emotional Distress, Reputational Harm, and Other Claims*

Plaintiffs assert in their amended petition that Lori has "suffered emotional pain and suffering, embarrassment, and reputational harm[.]" (Doc. 4, at 6). It is unclear to the Court whether plaintiffs intended to state any additional claims here or to merely describe the damages suffered as a result of other claims. In their reply brief, defendants request the Court dismiss "all" of plaintiffs' claims, including any "emotional distress claim[.]" (Doc. 26, at 1). The Court finds that defendants' reference to plaintiffs' "emotional distress claim" was intended as a description of plaintiffs' alleged damages.

Mental and emotional distress are proper measures of the compensable damages recoverable under Section 1983. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (citing *Carey v. Piphus*, 435 U.S. 247, 264 (1978)). To any extent plaintiffs intended to assert separate claims for emotional distress, reputational harm, or other similar claims, the Court finds there is not a sufficient factual or legal basis in the record to support such claims.

For these reasons, the Court **grants** defendants' Motion for Summary Judgment (Doc. 24) as to plaintiffs' independent claim, to the extent it was asserted, of emotional distress or other similar claims.

### C.    *Punitive Damages*

Both compensatory and punitive damages are available under Section 1983 upon proper proof. *See, e.g.*, *Coleman v. Rahija*, 114 F.3d 778, 787 (8th Cir. 1997). Punitive damages may be awarded only when "sufficiently serious misconduct" has been shown. *Id.* Such damages are intended to "punish the defendant for his willful or malicious conduct and to deter others from similar behavior." *Stachura*, 477 U.S. at 306 n.9. "The focus, in determining the propriety of punitive damages, is on the intent of the defendant, and whether the defendant's conduct is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards." *Coleman*, 114 F.3d at 787 (internal citation omitted). In Section 1983 cases, punitive damages may be appropriate where the defendant "is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Walters v. Grossheim*, 990 F.2d 381, 385 (8th Cir. 1993) (citation and internal quotation marks omitted).

Although punitive damages under Section 1983 may not ultimately reach the jury here, the Court cannot dismiss such damages at this stage as to Deputy Wolf. There is no indication in the record that Deputy Wolf acted with malicious motive or intent. There

is evidence viewed in the light most favorable to plaintiffs, however, that Deputy Wolf acted with reckless indifference to Lori's Fourth Amendment rights. *See id.* As the Court found in reviewing qualified immunity, there is a genuine question whether Deputy Wolf acted with reckless disregard as to the truth of his statements in his warrant affidavit. If proven, such conduct may be sufficiently serious to warrant punitive damages as a deterrent to future misconduct either by Deputy Wolf or others. Given that respondeat superior is inapplicable under Section 1983, such damages cannot be available against Cherokee County. Therefore, punitive damages may be available to plaintiffs under Section 1983 against Deputy Wolf.

Regarding Lori's claim under the Iowa Constitution, Cherokee County is statutorily exempt from punitive damages. IOWA CODE §§ 670.2, 670.4(1)(e). The Court need only assess whether punitive damages are appropriate as to Deputy Wolf, against whom such damages are available. *See* IOWA CODE § 670.12.

Iowa courts award punitive damages only if the defendant's conduct constituted a willful and wanton disregard for the rights of another. IOWA CODE § 668A.1(a). Iowa Courts have defined "willful and wanton" conduct as "an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which is usually accompanied by a conscious indifference to the consequences." *Cawthron v. Catholic Health Initiatives Iowa Corp.*, 743 N.W.2d 525, 529 (Iowa 2007) (citation omitted).

Here, when viewed in the light most favorable to plaintiffs sufficient facts are present to show that Deputy Wolf's actions were willful and wanton under Iowa law and thus could warrant punitive damages. For the same reasons discussed, Deputy Wolf's alleged inclusion of false information in his warrant affidavit made with a reckless disregard for the truth created a high probability of harm. *See Cawthron*, 743 N.W.2d at 529. Submitting the affidavit without first verifying the information would be

unreasonable and present an obvious risk of such injury. *See id.* If Deputy Wolf submitted the affidavit without contacting Lori and without reviewing the content of the text messages, his filing of the affidavit may constitute a conscious indifference of the consequences here. *See id.* Thus, the Court finds there is a genuine issue of material fact whether punitive damages under the Iowa Constitution are appropriate against Deputy Wolf.

For these reasons, the Court **denies** defendants' Motion for Summary Judgment (Doc. 24) as to plaintiffs' claim for punitive damages against Deputy Wolf on Lori's remaining claims under both Section 1983 and the Iowa Constitution, but the Court **grants** the motion as it relates to any punitive damages against Cherokee County.

## IV. CONCLUSION

For these reasons, defendants' Motion for Summary Judgment (Doc. 24) is **granted in part** and **denied in part** as follows:

1. Defendants' motion is **denied** as to Lori's claims against Deputy Wolf for false arrest under Section 1983 and Article I, Section 8 of the Iowa Constitution.

2. Defendants' motion is **granted** as to plaintiffs' claim against Sheriff Clyde for failure to train and/or supervise Deputy Wolf. The Clerk of Court is directed to **enter judgment** in favor of Sheriff Clyde and to **terminate** Sheriff Clyde as a party to this case.

3. Defendants' motion is **granted in part** and **denied in part** as to plaintiffs' respondeat superior claim against Cherokee County. Defendants' motion is **granted** as to plaintiffs' respondeat superior claim against Cherokee County for plaintiffs' Section 1983 claim. Defendants' motion is **denied** as to plaintiffs' respondeat superior claim against Cherokee County for plaintiffs' claim under Article I, Section 8 of the Iowa Constitution.

4.      Defendants' motion is **granted** as to Michael's loss of consortium claim. The Clerk of Court is directed to **enter judgment** against Michael and to **terminate** Michael as a party to this case.

5.      Defendants' motion is **granted** as to any independent cause of action for emotional distress.  This ruling does not affect the availability of emotion distress as a measure of damages on Lori's remaining claims.

6.      Defendants' motion is **granted in part** and **denied in part** as to plaintiffs' claim for punitive damages.  Defendants' motion is **denied** as to plaintiffs' claim for punitive damages against Deputy Wolf for Lori's claims under Section 1983 and Article I, Section 8 of the Iowa Constitution.  Defendants' motion is **granted** as to plaintiffs' claim for punitive damages against Cherokee County for Lori's claims under Section 1983 and Article I, Section 8 of the Iowa Constitution.

**IT IS SO ORDERED** this 5th day of December, 2019.


_____
C.J. Williams
United States District Judge
Northern District of Iowa