IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA WESTERN DIVISION

| | | |
|---|---|---|
| LORI OHLSON-TOWNSEND | ) | NO. 5:18-cv-04093 |
| | ) | |
| Plaintiff, | ) | CHEROKEE COUNTY DISTRICT |
| | ) | COURT |
| | ) | Case No. CVCV025770 |
| v. | ) | |
| | ) | |
| ALEC WOLF and CHEROKEE | ) | |
| COUNTY, | ) | **DEFENDANTS' PRETRIAL** |
| | ) | **BRIEF** |
| Defendants. | ) | |

COME NOW Defendants, by and through counsel, and submit the following pretrial brief:

## *INTRODUCTION*

The plaintiff filed the above captioned action against the defendants alleging that her state and federal constitutional rights were violated as a result of an unlawful arrest. She claims that as a result of the unlawful arrest she suffered injuries and is requesting monetary damages. She is also requesting that she be awarded attorney's fees and that punitive damages be imposed upon both defendants. Defendants' Motion for Summary Judgment did not address attorney fees nor did it address what parties to this lawsuit may be subject to punitive damages. Defendants wish to address such issues herein.

Further, due to a filing error, Defendants' Resistance to Plaintiff's Motion in Limine was considered "as is" without Page 3 of the original filing. Page 3 of Defendants' Resistance addressed Paragraph 5 of Plaintiff's Motion in Limine related to Prior Alleged Criminal Conduct of Plaintiff. The Court denied the motion in part and reserved ruling on its admissibility under rule 403. Defendants wish to address two other areas in which the evidence is admissible outside the presence of the jury and renew their resistance to Paragraph 5 of Plaintiff's Motion in Limine.

### ATTORNEY'S FEES

Plaintiff is not entitled to attorney's fees if the Jury rules in favor of the federal constitutional rights claim and awards nominal damages *or* rules in favor of the state constitutional rights claim only. Although an award of nominal damages renders plaintiffs the prevailing parties it does not mean that the prevailing party is entitled to attorney's fees. *Farrar v. Hobby*, 506 U.S. 103, 112, 113 S.Ct. 566, 573, 121 L.Ed.2d 494, 504 (1992). "[T]he most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained." *Hensley, supra*, 461 U.S., at 436, 103 S.Ct., at 1941. *Accord, Marek v. Chesny*, 473 U.S. 1, 11, 105 S.Ct. 3012, 3017, 87 L.Ed.2d 1 (1985). In *Hensley* the court observed that if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley, supra*, 461 U.S., at 436, 103 S.Ct., at 1941.

Further, "[w]here recovery of private damages is the purpose of ... civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Riverside v. Rivera*, 477 U.S. 561, 585, 106 S.Ct. 2686, 2700, 91 L.Ed.2d 466 (1986) (Powell, J., concurring in judgment). Such a comparison promotes the *115 court's "central" responsibility to "make the assessment of what is a reasonable fee under the circumstances of the case." *Blanchard v. Bergeron*, 489 U.S. 87, 96, 109 S.Ct. 939, 946, 103 L.Ed.2d 67 (1989). Having considered the amount and nature of damages awarded, the court may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness, *see Hensley*, 461 U.S., at 430, n. 3, 103 S.Ct., at 1937–1938, n. 3, or multiplying "the number of hours reasonably expended ... by a reasonable hourly rate," *id*., at 433, 103 S.Ct., at 1939. In some circumstances, even a plaintiff who formally "prevails" under § 1988 should receive no attorney's fees at all. A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party. *Farrar v. Hobby*, 506 U.S. 103, 112, 113 S.Ct. 566, 573, 121 L.Ed.2d 494, 504 (1992). In the case at hand, plaintiff claims her damages are $1,375,000. A damage award less than $1 should prohibit the plaintiff from recovering attorney's fees.

Attorney fees are not available to the plaintiff if they prevail on the state constitutional claim only. In a Godfrey action (a *Godfrey* action is the state

counterpart to a *Bivens* action. A *Bivens* action is a claim brought in federal court against a federal agent to recover damages from the agent's commission of a Federal constitutional tort. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397, 91 S. Ct. 1999, 2005, 29 L.Ed.2d 619 (1971)), a court cannot award attorney fees against the municipal employer of the constitutional tortfeasor unless there is an express statute allowing for such an award or the prevailing party satisfies the standard for common law attorney fees. *Baldwin v. City of Estherville*, 929 N.W.2d 691, 696 (Iowa 2019). There is no express statutory authorization for attorney fees in the case at hand.

### *PUNITIVE DAMAGES*

Punitive damages cannot be awarded against a municipality that employed an individual defendant alleged to have committed a state or federal constitutional violation. Similarly to *Baldwin* the Iowa Municipal Tort Claims Act (IMTCA) applies to Ohlson-Townsend's Iowa constitutional tort cause of action. When the legislature enacted the IMTCA, it did not expressly prohibit a punitive damage award against a municipality. *Id* at 698, *Citing* 1967 Iowa Acts ch. 405. In 1978, the Court concluded the IMTCA did not prohibit punitive damages against the municipality that was sued for its police officers' commission of the common law tort of false arrest. *Id. (*Citations omitted*).* In response to Young, the legislature amended the IMTCA to exempt municipalities from punitive damages liability. *Id.*

4

(Citations Omitted). Therefore the plaintiff is barred from recovering punitive damages against Cherokee County.

City of *Newport v. Fact Concerts, Inc.* barred the grant of punitive damages against cities and counties, holding that juries may grant them only against individual defendants. *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S. Ct. 2748 (1981).

## EVIDENCE OF PRIOR ARRESTS

Unbeknownst to Defendants, due to a filing error, their Resistance to Plaintiff's Motion in Limine was incomplete. Page 3 of the motion was not provided to the court and court considered the motion as filed. The omitted page included two additional grounds for which evidence of the arrest related to Mary Letsche is admissible. I have attached the complete motion, including the omitted page, hereto as Exhibit A. Evidence of other arrests, not subject to the motion in limine, is also admissible for the reasons set forth in Exhibit A.

WHEREFORE, Defendants present their Pretrial Brief.

LAW OFFICES OF REDENBAUGH & MOHR, P.C.

By: _____

Brett C. Redenbaugh      #AT9766
111 W 6th St, P.O. Box 1284
Storm Lake, IA 50588-1284
PH: 712.732.1873
FAX: 712.732.4274
E-MAIL: brett@redenlaw.com
ATTORNEY FOR DEFENDANTS

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 31st day of December, 2019, the foregoing was electronically filed with the Clerk of Court. Notice of this filing will be sent automatically to all parties who are registered users of the Court's electronic case filing system. Parties may access this filing through the Court's system.

/s/ Michelle R. Murphy_____
Michelle R. Murphy

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | | |
|---|---|---|
| LORI OHLSON-TOWNSEND, | ) | |
| | ) | NO. 5:18-cv-04093-CWJ |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **BRIEF IN SUPPORT OF** |
| ALEC WOLF and | ) | **DEFENDANTS' RESISTANCE** |
| CHEROKEE COUNTY, | ) | **TO PLAINTIFF'S MOTION** |
| | ) | **IN LIMINE** |
| Defendants. | ) | |
| | ) | |

COMES NOW Defendants Alec Wolf and Cherokee County, by and through counsel, and resists Plaintiffs' Motion in Limine. In support of their resistance defendant states:

1.     Paragraph 1 is not resisted.

2.     Plaintiff resists Paragraph 2. In their motion Plaintiff states that evidence or testimony related to Michael Townsend's prior criminal conviction should be prohibited and refers to Rule 608. Michael Townsend is not a party to this lawsuit, he is Lori Ohlson-Townsend's spouse and it is assumed he is being called to testify about her character and her damages. Rule 608(b) allows for evidence of a criminal conviction on cross examination if it is probative of the character or truthfulness of the witness. The jury should not be barred from hearing evidence related to Mr. Townsend's character on cross examination. The fact that he is of

1



questionable character due to a felony drug conviction is relevant. The evidence is not being proffered to show that the plaintiff likely committed the underlying crime or that her truthfulness is in question.

Further, it is admissible for the purpose of mitigating damages. If the Plaintiff is going to testify that the misdemeanor assault charge irreparably damaged her reputation, the jury should be able to consider her willingness to marry someone who was convicted of a much more serious offense. The jury should also be able to balance the weight of the effect on ones reputation of being charged with a simple misdemeanor, which was later dismissed, verses marrying a convicted drug felon.

3.    Paragraph 3 is not resisted.

4.    Paragraph 4 is not resisted.

5.    Defendant resists Paragraph 5. Plaintiff claims that evidence related to a prior harassment charge should be inadmissible because it is more prejudicial than probative and that it is improper character evidence. Lori Ohlson-Townsend was arrested for harassment by the Cherokee Police Department on August 5, 2011. The charge was the exact same charge, harassment in the 5th degree, as the charge that is the subject matter of this civil suit. The purpose of offering the evidence is not to show that the Plaintiff acted in accordance with her character but instead for the purpose of mitigation of damages.

In her Answers to interrogatories the plaintiff states, "My arrest was published by multiple news outlets, and broadcasted on the radio, which caused me further embarrassment, and public humiliation. Since my arrest I have become a social recluse." It is reasonable to assume that the 2011 arrest was also publicized causing her embarrassment and public humiliation. Defense counsel should be allowed to question her on this matter during cross examination. Arguably, her reputation would have been damaged as much by the 2011 arrest as the 2018 arrest. Courts across the country since the 1800's have determined that evidence of a prior arrest is admissible for the purpose of mitigation of damages on the grounds that a reputation already damaged in the very point in controversy is not as valuable as an unblemished reputation.

Further, the evidence is admissible as impeachment evidence. In her deposition Plaintiff testified under oath, "I was very distraught. I've never been arrested." In fact, she was charged with the same crime in 2011. Her statement is clearly misleading and the evidence is admissible for the purpose of impeachment.

Finally, it is admissible to prove knowledge, an exception under Rule of Evidence 404(b)(2) that the Plaintiff knew, once she received a text from her ex-husband that said, "Do not contact me anymore," future contact with him could be seen as having the intent to annoy and rise to the level of simple misdemeanor

harassment. Evidence related to her prior criminal charge is relevant, not more prejudicial than probative, and not prohibited by Rule 404.

6. Defendant resists Paragraph 6. Plaintiff claims that evidence related to plea negotiations is inadmissible under Rule 410. Rule of Evidence 410 states:

> In a civil or criminal case, evidence of the following is not admissible against the *defendant* who made the plea or participated in the plea discussions:
> (1) a guilty plea that was later withdrawn;
> (2) a nolo contendere plea;
> (3) a statement made during a proceeding on either of those pleas under Federal Rule of Criminal Procedure 11 or a comparable state procedure; or
> (4) a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea.

There is no doubt the plaintiff will argue that her case was dismissed because there was no probable cause to arrest. However, the jury should not be barred from hearing that the Plaintiff, by agreement with the prosecutor, paid certain court costs to have her case dismissed and she offered to stipulate in a divorce modification that she and the alleged victim would limit their communication in certain ways. The evidence of that arrangement and offer does not fall within any of the provisions of Rule 410 and is admissible. The jury would be misled if they were told the case was dismissed without any consideration being paid by the defendant Lori Ohlson-Townsend.

7.    Defendant resists Paragraph 7.  Plaintiff would like to exclude any text messages prior to July 25, 2019.  Additional text messages, specifically a text message sent to Lori by Kent on July 19, 2018, are relevant to show Defendant, Alec Wolf could have reasonably believed any subsequent contact from Lori to Kent could be harassment.  It is also relevant to show that Lori had knowledge that any contact with Kent after the July 19th text message could be seen as unwanted and might rise to the level of harassment.

On July 19, 2018, Kent, the alleged victim of harassment, sent Lori a text message that said, "Lori, please no(sic) not contact me at all. If there is any business questions or concerns you have please contact my lawyer Dam(sic) Connell. Thank you. Kent."  Alec Wolf testified in his deposition, "From what I understood at the time, she (Lori) had no legitimate reason to communicate with Kent because Kent told her to stop, and when someone tells you to stop -- when one party says you are to stop harassing them, they have to; otherwise, it's harassment."  Alec will testify at trial that part of the evidence he relied on to meet certain elements of harassment was the knowledge of the July 19th text message from Kent to Lori.  Subsequently thereafter Lori's criminal lawyer, John Murray, spoke with Michael Townsend and called the Cherokee County Sheriff's department and the police department regarding the text message.   I addressed this very topic in Mr. Murray's deposition. The dialog is as follows:

Q:    "Were you aware that Kent sent Lori a text message on July 19th, 2018, asking her not to contact him?"

A    Yes, at 1:45 p.m., Kent had texted to Lori: "Lori, please do not contact me at all.  If there is any business questions or concerns you have please contact my lawyer, Dan Connell. Thank you. Kent."

Q: Do you know -- or do you recall, after that text message, did Lori or Michael Townsend contact you?

A.    After that contact, yes, they did.

Deposition of John Murray Pg. 8-9.

The July 19th text message is relevant because it shows Kent made Lori aware that any future contact would be unwanted.  A reasonable Jury could conclude that Lori and her attorney were on notice at that time that any future communication with Kent could be seen as harassment.

Further, a reasonable officer could conclude any contact subsequent to the July 19th text message could meet the elements of harassment.  Deputy Wolf's Officer Investigative Notes state, "Told Lori in the past that they (Kent and Shannon Olson) do not want to speak to her and that Lori needs to stop sending Kent text messages."  This is a direct reference to prior text messages that are relevant to Alec Wolf's frame of mind when he applied for the warrant.

The July 19th text message is also relevant to the prosecutor's frame of mind. Kristal Phillips will testify that she would view any contact after a person is told to not have any further contact with another person as a potential harassment charge. The July 19th text message and any other text message prior to July 19th from Kent to Lori are relevant. Defendant agrees that they could certainly be harmful to the plaintiffs claim that she did not know Kent did not want him to contact her and that Alec Wolf did not have reason to believe the communication from Lori to Kent was unwanted but the probative value far outweighs any prejudicial effect. The jury in this case is entitled to know what evidence the Defendant relied on for the basis of his warrant, what Lori knew and when she knew it, what John Murray relied on in advising his client, and what evidence the prosecutor considered in the case.

Defendants do not intend to argue that the volume of text messages between Kent and Lori, during any time period, support a charge for harassment.

WHEREFORE Defendants' pray that Paragraphs 2, 5, 6, and 7 of Plaintiff's Motion in Limine be denied.

LAW OFFICES OF REDENBAUGH & MOHR, P.C.

By: _____

Brett C. Redenbaugh      #9766
111 W 6th St, P.O. Box 1284
Storm Lake, IA 50588-1284
ph 712.732.1873
fax 712.732.4274
email: brett@redenlaw.com
ATTORNEY FOR DEFENDANTS

## CERTIFICATE OF SERVICE

The undersigned certifies that on the _____ day of December, 2019, the foregoing was electronically filed with the Clerk of Court. Notice of this filing will be sent automatically to all parties who are registered users of the Court's electronic case filing system. Parties may access this filing through the Court's system.

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

LORI OHLSON-TOWNSEND and            No. 5:18-cv-04093
MICHAEL TOWNSEND, Wife and
Husband,

     Plaintiffs,

v.

ALEC WOLF, JEROD
CLYDE, and CHEROKEE
COUNTY,

     Defendants.

     DEPOSITION of JOHN M. MURRAY, taken on
behalf of the Defendants, reported by Robin R.
Qualy, CSR, starting at 11:10 a.m., on
August 16, 2019, at the offices of Redenbaugh &
Mohr, Storm Lake, Iowa.

APPEARANCES

        Molly M. Hamilton
        Hamilton Law Firm, P.C.
        606 Ontario Street
        Storm Lake, IA  50588-0188
           On behalf of the Plaintiffs

        Brett C. Redenbaugh
        Law Offices of Redenbaugh & Mohr, PC
        111 West 6th Street
        Storm Lake, IA  50588-1284
           On behalf of the Defendants

   ALSO PRESENT:  Lori Ohlson-Townsend

Ohlson-Townsend v. Wolf, et al.                    JOHN M. MURRAY - 8/16/2019

8

1    there's been disagreements.

2        Q.    Sure.  Your perception of their

3    ability to communicate is that they sometimes

4    disagree or that it's a higher level of acrimony

5    than that?

6        A.    Well, sometimes.  There are some times

7    that they communicate quite well, so when you'd

8    look at how the business has gone for the last

9    several years, you can't get through without

10   having some form of communication, but, yes,

11   there have been some areas of serious

12   disagreement.

13            I would say you could

14   compartmentalize those things.  So some parts of

15   the turkey business work.  Other parts of the

16   turkey business, there is a difference.  And

17   they have been able to carry on, though.  That's

18   the thing.

19       Q.    Were you aware that Kent sent Lori a

20   text message on July 19th, 2018, asking her not

21   to contact him?

22       A.    Can I check my notes for that?

23       Q.    Yes.

24       A.    What was the date?

25       Q.    July 19th, 2018.

Ohlson-Townsend v. Wolf, et al.          JOHN M. MURRAY - 8/16/2019

9

1      A.    Yes.

2      Q.    Okay.  And if you have the text in

3   front of you, just read it for me, if you would.

4      A.    Yes, at 1:45 p.m., Kent had texted to

5   Lori:  "Lori, please do not contact me at all.

6   If there is any business questions or concerns

7   you have please contact my lawyer, Dan Connell.

8   Thank you.  Kent."

9      Q.    Do you know -- or do you recall, after

10   that text message, did Lori or Michael Townsend

11   contact you?

12      A.    After that contact, yes, they did.

13      Q.    And what was the purpose of your

14   conversation with them?

15      A.    Well, there were several contacts.

16   What I'm remembering -- And let me check my

17   notes.  On July 19, Michael, this would be

18   Lori's husband, had come to my office, and

19   Michael had told me it was at Lori's request.  I

20   believe Lori was busy with something or other.

21            And what was presented to me at

22   the time was that there was some communication

23   from a law enforcement officer, Chris Alesch,

24   from Cherokee, so it was in that context that I

25   was brought in on that day.

Rev. 06/2006

# IOWA INCIDENT REPORT
## CHEROKEE COUNTY SHERIFF'S OFF
111 N 5TH ST
CHEROKEE, IA 51012
(712) 225-6728

| Case Number | 18005550 |
| Date/Time of Report | 8/1/2018    16:47   Hrs |
| Status | 03 - CLEARED BY ARREST |

## SUMMARY

| County | ORI Number |
|---|---|
| CHEROKEE - 18 | IA0180000 |

| Is Date and Time of Incident Known? | Yes | Incident Date or Lower Date Range | 07/26/2018 | Upper Date Range | | Incident Time or Lower Time Range | 21:46 Hrs. | Upper Time Range | Hrs. |

| Day of Week Incident Occurred | Exceptionally Cleared | Date Cleared Exceptionally |
|---|---|---|
| THURSDAY | N - NOT APPLICABLE | |

### INCIDENT REPORTED BY

| Was Incident Reported by a Victim? | NO | Reporting Victim's Sequence No. | Name - Last | OHLSON | First | SHANNON | Middle | LEE | Suffix |

| Business Name (if Incident was Reported by a Business) | Address |
|---|---|
| | 1886 610TH ST |

| City | State | Zip Code | Home/Cell Phone | Work Phone |
|---|---|---|---|---|
| CHEROKEE | IA | 51012 | (712) 229-5991 | |

## NIBRS OFFENSE

| Seq. No. | Code Section | Charges/Offense | UCR Offense Code |
|---|---|---|---|
| 001 | 708.7(1)(a)(1) | HARASSMENT BY COMMUNICATION - SIMPL | INTIMIDATION - 13C |

| Attempted/Completed | Type of Criminal Activity (up to 3) |
|---|---|
| C - COMPLETED | |

| Type of Weapon/Force Involved (up to 3) | Gang Information (up to 2) |
|---|---|
| | N |

| No. of Premises Entered | Method of Entry | Offender Suspected of Using (up to 3) |
|---|---|---|
| | | N - NOT APPLICABLE |

### LOCATION OF OFFENSE

| Location Type | X Coordinate | Y Coordinate |
|---|---|---|
| 20 - RESIDENCE/HOME | 294541.531 | 4723038 |

| Literal Description |
|---|
| S AVE |

## OFFENDER

| Type of Offender | Sequence No. | NIBRS Offense Sequence Numbers | Lesser Offense Sequence Numbers |
|---|---|---|---|
| 01 - Offender | 01 | 001 | |

| Name - Last | First | Middle | Suffix |
|---|---|---|---|
| OHLSON-TOWNSEND | LORI | MICHELLE | |

| Alias(es) |
|---|
| |

| Address | City | State | Zip Code | Home Phone |
|---|---|---|---|---|
| 132 PHEASENT AVE | STORM LAKE | IA | 50588 | (712) 229-5788 |

| DOB Known? | DOB | Age or Lower Age Range | Upper Age Range | SSN | Resident Status |
|---|---|---|---|---|---|
| YES | | 45 | | | R - RESIDENT |

| Driver's License - Number | State | Gender | Height | Weight | Eye Color | Hair Color |
|---|---|---|---|---|---|---|
| | IA | F - FEMALE | 5' 06" | 155 LBS | HAZEL - HAZ | BLONDE OR STRAWBERRY - BLN |

| Skin Tone | Race | Ethnicity |
|---|---|---|
| LIGHT - LGT | W - WHITE | N - NOT OF HISPANIC ORIGIN |

| Scars/Marks/Tattoos | Offender Present When Officer Arrived? |
|---|---|
| | NO |

| Type of Injury (up to 5) |
|---|
| N - NONE |

### EMPLOYMENT OR SCHOOL INFO

| Employer or School | Occupation |
|---|---|
| | |

| Address | City | State | Zip Code | Work Phone |
|---|---|---|---|---|
| | | | | |

### ARREST INFO

| Offender Arrested? | Arrest Trans. Booking No. | Type of Arrest | Arrest Date | Arrest Time |
|---|---|---|---|---|
| NO | | | | Hrs. |

| Associated Offense Sequence No. | Miranda By | Miranda Date | Miranda Time |
|---|---|---|---|
| | | | Hrs. |

| Arrestee Condition | Arrestee Armed With (up to 2) |
|---|---|
| | |

| Place of Birth | Multiple Arrestee Indicator | Additional Incidents Cleared |
|---|---|---|
| | | |

### JUVENILE INFO

| Parent/Guardian Contacted? | Name - Last | First | Middle | Suffix |
|---|---|---|---|---|
| | | | | |

| Address | City | State | Zip Code |
|---|---|---|---|
| | | | |

| Home Phone | Work Phone | Juvenile Arrestee Disposition |
|---|---|---|
| | | |

| | Type of Victim | Sequence No. | - Last | | First | | Middle | | Suffix |
|---|---|---|---|---|---|---|---|---|---|
| **V** | I - INDIVIDUAL | 001 | ...SON | | KENT | | ALAN | | |

**V I C T I M**

**001**

| Business/Organization/State/County/Municipality Name | Address | City | State | Zip Code |
|---|---|---|---|---|
| | 8103 S AVE | CHEROKEE | IA | 51012 |

| Phone | Alias(es) |
|---|---|
| (712) 229-8531 | |

| DOB Known? | DOB | Age or Lower Age Range | Upper Age Range | SSN | Resident Status |
|---|---|---|---|---|---|
| YES | | 52 | | | R - RESIDENT |

| Driver's License - Number | State | Gender | Height | Weight | Eye Color | Hair Color |
|---|---|---|---|---|---|---|
| | IA | M - MALE | 5' 10" | 215 LBS | BROWN - BRO | BROWN - BRO |

| Skin Tone | Race | Ethnicity | Scars/Marks/Tattoos |
|---|---|---|---|
| LIGHT - LGT | W - WHITE | N - NOT OF HISPANIC ORIGI | |

Type of Injury (up to 5)

## EMPLOYMENT OR SCHOOL INFO

| Employer or School | Occupation |
|---|---|
| | |

| Address | City | State | Zip Code | Work Phone |
|---|---|---|---|---|
| | | | | |

## VICTIM CONNECTED TO UCR OFFENSE CODES

| UCR Offense Code 1 | UCR Offense Code 2 |
|---|---|
| INTIMIDATION - 13C | |
| UCR Offense Code 3 | UCR Offense Code 4 |
| UCR Offense Code 5 | UCR Offense Code 6 |
| UCR Offense Code 7 | UCR Offense Code 8 |
| UCR Offense Code 9 | UCR Offense Code 10 |

## ADDITIONAL OFFENSE CIRCUMSTANCE INFO

Aggravated Assault/Homicide Circumstances (up to 2)

Additional Justifiable Homicide Circumstances

## VICTIM'S RELATIONSHIP TO OFFENDER(S)

| First Offender Seq. No. | Victim's Relationship to First Offender | Second Offender Seq. No. | Victim's Relationship to Second Offender |
|---|---|---|---|
| 01 | XS - VICTIM WAS EX-SPOUSE | | |
| Third Offender Seq. No. | Victim's Relationship to Third Offender | Fourth Offender Seq. No. | Victim's Relationship to Fourth Offender |
| Fifth Offender Seq. No. | Victim's Relationship to Fifth Offender | Sixth Offender Seq. No. | Victim's Relationship to Sixth Offender |
| Seventh Offender Seq. No. | Victim's Relationship to Seventh Offender | Eighth Offender Seq. No. | Victim's Relationship to Eighth Offender |
| Ninth Offender Seq. No. | Victim's Relationship to Ninth Offender | Tenth Offender Seq. No. | Victim's Relationship to Tenth Offender |

## SPECIAL CIRCUMSTANCES

| Not Applicable | ☑ | Bias Crime | ☐ | Domestic Abuse | ☐ | LEOKA | ☐ |
|---|---|---|---|---|---|---|---|

## BIAS CRIME

| Bias Motivation | Target Code |
|---|---|
| | |

Bias Group Affiliations

## DOMESTIC ABUSE

| Children Present? | Seq. No. of Domestic Abuse Offender | Domestic Abuse Referrals (up to 6) |
|---|---|---|
| | | |

## LAW ENFORCEMENT OFFICER KILLED OR ASSAULTED

| Officer Killed or Assaulted | Type of Assignment |
|---|---|
| | |
| Body Armor | Call Type |

ON 7-26-18 I TOOK A REPORT OF HARASSMENT THAT OCURRED IN CHEROKEE COUNTY. THE REPORTING PARTY, SHANNON OHLSON, STATED THAT HER FATHER-IN-LAW, KENT OHLSON, WAS RECEIVING HARASSING TEXT MESSAGES FROM HIS EX-WIFE. HIS EX-WIFE IS LORI OHLSON-TOWNSEND AND THEY HAVE BEEN SEPARATED FOR SOME TIME. THE MESSAGES ARE RELATED TO A TURKEY FARM, WHICH KENT OWNS, AND LORI HAS NO CONNECTION TO. THE TEXT MESSAGES WERE SENT BY LORI TO KENT ON THE FOLLOWING DATES AND TIMES. ON 7-25-18 AT 2146 HOURS, 7-26-18 AT 0957, 1005 AND 1006 HOURS. MESSAGES WERE ALSO SENT ON 7-27-18 AT 0622 AND 0952 HOURS. SHANNON AND KENT HAVE TOLD LORI IN THE PAST THAT THEY DO NOT WANT TO SPEAK TO HER AND THAT LORI NEEDS TO STOP SENDING KENT TEXT MESSAGES. I CALLED LORI ON 7-26-18 AND LEFT HER A VOICEMAIL SAYING THAT SHE NEEDS TO STOP TEXTING KENT AND TO NOT CONTACT SHANNON. LORI NEVER RETURNED MY PHONE CALL AND I TOLD SHANNON THAT I WARNED LORI AND IF KENT RECEIVED ANYMORE TEXTS, SHE WAS TO LET ME KNOW. ON 7-31-18 I RECEIVED A VOICE MESSAGE FROM SHANNON STATING THAT KENT IS STILL RECEIVING TEXT MESSAGES FROM LORI. KENT HASN'T RESPONDED TO ANY OF THEM AND I TOLD SHANNON THAT SINCE LORI ISN'T UNDERSTANDING THAT WHAT SHE IS DOING IS HARASSMENT. I REQUESTED A WARRANT FOR LORI'S ARREST FOR HARASSMENT IN THE 3RD DEGREE AND ALSO A NO CONTACT ORDER BETWEEN KENT AND LORI.

IT SHOULD BE NOTED THAT ON 8-1-18 I WAS TOLD BY DEPUTY AARON SCHROEDER OF THE CHEROKEE COUNTY SHERIFF'S OFFICE THAT HE RRECEIVEDA PHONE CALL FROM SHANNON OHLSON. SHANNON TOLD HIM THAT LORI IS STILL TEXTING KENT OHLSON. I CALLED KENT AND HE TOLD ME THAT HE RECEIVED A TEXT FROM LORI AT 0630 HOURS ABOUT TURKEYS ON THE FARM.

-ALEC WOLF 18-5

**OFFICER**

| Complainant/Reporting Party Signature |
|---|
| *Alec Wolf* (signature) |

| Reporting Officer | Badge Number | Video Taken? | | Evidence Seized? | Photos Taken? |
|---|---|---|---|---|---|
| WOLF ALEC | 18-5 | 00 - NONE | | NO | NO |
| Supervisor | Badge Number | Incident Assigned To | | | |

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

LORI OHLSON-TOWNSEND and          No. 5:18-cv-04093
MICHAEL TOWNSEN, Wife and
Husband,

     Plaintiffs,

v.

ALEC WOLF, DEREK SCOTT,
AARON SCHROEDER, JEROD
CLYDE, and CHEROKEE
COUNTY,

     Defendants.

     DEPOSITION of LORI OHLSON-TOWNSEND, taken
on behalf of the Defendants, reported by Robin
R. Qualy, CSR, starting at 1:57 p.m., on May 8,
2019, at the offices of Hamilton Law Firm, Storm
Lake, Iowa.

APPEARANCES

     Steven D. Hamilton
     Molly M. Hamilton
     Hamilton Law Firm, P.C.
     606 Ontario Street
     Storm Lake, IA  50588-0188
          On behalf of the Plaintiffs

     Brett C. Redenbaugh
     Law Offices of Redenbaugh & Mohr, PC
     111 West 6th Street
     Storm Lake, IA  50588-1284
          On behalf of the Defendants

ALSO PRESENT:  Michael Townsend

Ohlson-Townsend, et al. v. Wolf, et al.          LOI  OHLSON-TOWNSEND - 5/8/2019

31

1    Chris Cole saying, "There is a warrant for your

2    arrest," and I said, "What?"  I said, "Did I run

3    a toll or something on vacation in Florida?"  I

4    said, "What is this for?"  He goes, "I do not

5    know.  Chris just told me that you need to turn

6    yourself in so they don't come to the college,

7    and you need to call -- have your husband and

8    have bail money and go to the police station,"

9    and I said, "You can't tell me anything?"  He

10   said, "No."  I was very distraught.  I've never

11   been arrested.  I've never been to jail.

12        Q.    Let me stop you right there.  You said

13   that the head of your security came and told you

14   that.

15        A.    He called me.

16        Q.    Okay.  Who is that?

17        A.    Chris -- or Craig.  I can't remember

18   his last name.  It's like -- It's a really long

19   name, and he hadn't been the head of security

20   for a really long time, but he was actually in

21   Chicago and got the phone call.

22              And Chris Cole or him did not

23   want the embarrassment for me or the college to

24   have them come, so obviously I had no idea what

25   I did, but I was going to do what they told me.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

| | | |
|---|---|---|
| LORI OHLSON-TOWNSEND and<br>MICHAEL TOWNSEND, wife and husband, | ) <br> ) <br> ) | NO. 18-cv-4093-CWJ |
| Plaintiffs, | ) <br> ) | Cherokee County District Court<br>Case No. CVCV025770 |
| v. | ) <br> ) | |
| ALEC WOLF, DEREK SCOTT, AARON<br>SCHROEDER, JEROD CLYDE, and<br>CHEROKEE COUNTY, | ) <br> ) <br> ) <br> ) | **PLAINTIFF LORI OHLSON-<br>TOWNSEND ANSWERS TO<br>INTERROGATORIES AS** |
| Defendants. | ) <br> ) <br> ) | **AS PROPOUNDED BY<br>DEFENDANTS** |

COMES NOW Plaintiff Lori Ohlson-Townsend and submits her Answers to Interrogatories as propounded by Defendants.

HAMILTON LAW FIRM, P.C.
P.O. BOX 188
606 ONTARIO STREET
STORM LAKE, IOWA 50588
(712) 732-2842
(712) 732-6202 (FAX)


BY: _Molly Hamilton_
STEVE HAMILTON, AT0003128
MOLLY M. HAMILTON, AT0013636
steve@hamiltonlawfirmpc.com
molly@hamiltonlawfirmpc.com
ATTORNEY FOR PLAINTIFF

**INTERROGATORY NO. 3:** Set forth in detail each and every act or omission of defendant(s) which you contend was a proximate cause of your injuries or damages. For each such act or omission, set forth what rule, standard, regulation or statute you contend was violated by the defendant(s) and set forth in detail each of the following:

A. Name of Defendant

B. Date of act or omission;

C. First and last name of each and every individual involved;

D. Description of the incident.

**ANSWER:**

I believe the Complaint and Affidavit dated July 31, 2018, has mis-statements in it. The Complaint and Affidavit was completed by Alec Wolf. He alleges that I committed a violation of Code of Iowa § 708.7(4), which is harassment in the third degree. Alec Wolf alleges in his Affidavit to obtain a warrant for my arrest that "I did harass Kent Ohlson by communicating by telephone, telegraph, or writing without legitimate purpose and in a manner likely to cause the other person annoyance or harm," and Defendant Wolf further alleged that I was told by [myself] to cease contact with Kent," and that I have "no legitimate reason to contact Kent." Defendant Wolf never informed me, either via direct conversation nor by any voicemail, that I was not to contact Kent or that my communication caused harm or annoyance. Second, I have adult children with Kent, one of whom we were planning and financing a wedding together, and Kent and I co-own a turkey farm business together that requires daily communication. Defendant Wolf did not do any reasonable investigation or inquiry into the legal ownership of the turkey farm. Further, the Complaint and Affidavit and Incident Report show that the alleged victim, Kent Ohlson, did not report this alleged crime. The texts that are the subject of this alleged crime were dated July 25, 2018, July 26, 2018, July 27, 2018, and July 31, 2018. These text messages relate to chores on the co-owned turkey farm, and our daughter's wedding. During this timeframe, these texts were sent between Kent, Plaintiff Michael Townsend, and myself, with the initiation of contact by Kent Ohlson. In the time leading up to the scheduled criminal trial, my attorney, John Murray, turned over text message transcriptions and my cellular phone call log, which does not show an incoming call by Defendant Wolf. There was never any statement by Kent Ohlson, alleged victim, turned over to my attorney. In fact, the first time any law enforcement or judicial officer spoke to Kent Ohlson, the alleged victim, was one to two days prior to the scheduled trial. I also believe Defendant Alec Wolf did not have probable cause that he alleges existed by stating I was "caught in the act." Defendant Alec Wolf never approached me or viewed text messages on my phone for the period in question, and never did the same with Kent Ohlson's cellular phone so he never confirmed the actual receipt nor the content of the alleged harassing text messages. I believe Defendant Wolf mis-stated these facts with the

single intention to obtain a warrant for my arrest that he knew was improper. I believe Aaron Schroeder knew of Defendant Wolf's intent to mis-state alleged facts in order to obtain an improper warrant for my arrest. I believe Defendant Jerod Clyde participated in withholding of evidence against me in that neither my attorney nor I received the Incident Report which specified the alleged facts that gave rise to the alleged crime, and without this information I could not have defended myself against this criminal charge, and failed to turn over any call log that contained record of him calling me. Further, Defendant Clyde has failed to train and/or supervise his deputies in their investigatory and/or law enforcement duties.

Without Defendant Wolf's mis-statement of facts, Magistrate Walsh would not have issued a warrant for my arrest, and I would not have been arrested and improperly detained at the Buena Vista County Jail. Because of this arrest and subsequent criminal proceeding, I had to hire an attorney and pay attorney's fees.

As a result of the wrongful arrest, I suffered embarrassment, humiliation, and emotional distress. I was informed of the warrant for my arrest by the head of security at my place of employment. I had to inform my supervisor of the arrest and criminal charges as a condition of my employment. I was told that if I was found guilty or pled guilty, this could negatively impact my employment at Buena Vista University, including termination.

My arrest was published by multiple news outlets, and broadcasted on the radio, which caused me further embarrassment, and public humiliation.

I believe Cherokee County Sheriff Department further conspired to harass me and cause me injury after the criminal charges were dismissed because Cherokee County Sheriff caused a Storm Lake Police Department Officer to come to my placement of employment again in October 2018 to talk with me regarding additional potentially harassing communications. The officer looked at the text messages and indicated to me they did not rise to the level of harassment.

Since my arrest I have become a social recluse. I do not want to go out with any of my friends to socialize because I am embarrassed and humiliated about my arrest. I am afraid that I will be approached by law enforcement at any time in public due to allegations that I have committed a crime. I'm anxious about getting pulled over by law enforcement.

I feel anxious most of the time. I do not interact with Mike the same way since my arrest.

I certify under penalty of perjury and pursuant to the laws of the state of Iowa that the preceding is true and correct.

_____
Signature

Feb. 28, 19
Date